# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 21-CV-6909 (AMD) (RER)

INNOVATIVE SPORTS MANAGEMENT, INC. D/B/A INTEGRATED SPORTS MEDIA

VERSUS

TRIANGLE EATERY & BAR, LLC D/B/A M.I.A. MADE IN ASTORIA
AND
PIETRO MANETTA

**REPORT & RECOMMENDATION**

December 14, 2022

**TO THE HONORABLE ANN M. DONNELLY
UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Innovative Sports Management, Inc. d/b/a Integrated Sports Media ("Plaintiff" or "ISM") brought this action against Pietro Manetta ("Manetta") and Triangle Eatery & Bar, LLC ("Triangle Eatery") (collectively, "Defendants"), alleging unauthorized cable and satellite transmission under the Federal Communications Act of 1934, 47 U.S.C. §§ 553, 605. (ECF No. 1 ("Compl.")). Pending before the Court is Plaintiff's Motion for Default Judgment (ECF No. 10 ("Mot. for Default J."), which Your Honor referred to me for a Report and Recommendation (Order dated 8/17/2022).

After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that Plaintiff's Motion for Default Judgment be denied, and that the action be dismissed for failure to timely serve Defendants under Federal Rule of Civil Procedure 4(m).

1

## BACKGROUND

Plaintiff is a sports media business that distributes sports programming to commercial businesses such as bars, restaurants, and nightclubs. (Compl. ¶ 6). As relevant here, Plaintiff maintained the exclusive rights to license commercial access to the December 15, 2018 *Canelo Alvarez vs. Rocky Fielding* boxing match telecast including all undercard bouts and commentary (the "Program"). (Compl. ¶¶ 3, 6). The Program originated via an electronically coded or scrambled satellite broadcast, which could only be exhibited by commercial businesses after entering into a contract, paying a commercial sublicense fee, and obtaining authorization from Plaintiff. (Compl. ¶¶ 7–8).

Triangle Eatery is a New York limited liability company that owns and operates M.I.A. Made in Astoria, a commercial business located at 27-35 21st Street, Astoria, NY 11102 (the "Astoria Address"). (Compl ¶ 4). Manetta, a New York resident, is the owner and operator of Triangle Eatery, and in turn is the operator and controller of M.I.A. Made in Astoria. (Compl. ¶ 5). Plaintiff alleges that Defendants intentionally circumvented the commercial sublicense requirement, obtained access to the Program without paying a fee, and unlawfully exhibited the Program to patrons at M.I.A. Made in Astoria on December 15, 2018. (Compl. ¶¶ 8–14). Accordingly, Plaintiff filed this action against Defendants on December 15, 2021, alleging claims of satellite piracy under 47 U.S.C. § 605, or in the alternative, cable piracy under 47 U.S.C. § 553. (Compl. ¶¶ 3, 17–22).

After filing the Complaint, Plaintiff's process server attempted to serve both Defendants on February 17, 2022, at 6054 69th Place #2, Maspeth, NY 11378 (the "Maspeth Address"). (ECF Nos. 5–6). The process server attempted to serve Manetta by leaving a copy of the Summons and Complaint with a person named "Nina," who was described as a "co-occupant" at the Maspeth Address. (ECF No. 5). The process server did not indicate Manetta's relationship to the premises

in the form affidavit of service (*i.e.*, dwelling place, place of business, usual place of abode, or last known address). (*Id.*). The process server simultaneously attempted to serve Triangle Eatery by delivering a copy of the Summons and Complaint to "Nina," who was described as a "member" of the limited liability company who "specifically stated he/she was authorized to accept service on behalf of the Corporation/Government Agency/Entity." (ECF No. 6). To complete service, the process server subsequently mailed copies of the Summons and Complaint to each Defendant at the Maspeth Address on February 21, 2022. (ECF Nos. 5–6). Plaintiff filed proof of these service attempts with the Court on May 24, 2022. (ECF Nos. 5–6).

On June 7, 2022, this Court ordered that (a) the parties must file a stipulation extending the time to answer; (b) plaintiff must file a motion for the entry of a notation of default; or (c) defendants must file an answer no later than June 15, 2022. (Order dated 6/7/2022). Plaintiff thereafter requested the entry of default on June 14, 2022 (ECF No. 8), which the Clerk of the Court entered on June 17, 2022 (ECF No. 9). On August 1, 2022, having observed no further activity on the docket, this Court ordered that Plaintiff move for default judgment on or before August 15, 2022. (Order dated 8/1/2022). Plaintiff then filed the instant motion on August 16, 2022. (Mot. for Default J.). Plaintiff's Motion included a Certificate of Service by Plaintiff's counsel, certifying that "a copy of the [Motion] and accompanying documents was served on the 15th day of August, 2022, via First Class US MAIL" on "Pietro Manetta Triangle Eatery & Bar LLC d/b/a M.I.A. Made in Astoria" at the Maspeth Address. (Mot. for Default J. at 3).

On October 24, 2022, this Court made a preliminary determination that Plaintiff's failure to identify Manetta's or Triangle Eatery's relationship to the premises at the Maspeth Address and failure to allege facts establishing a relationship between "Nina" and Triangle Eatery rendered service upon both Defendants insufficient, and ordered Plaintiff to show cause as to why the

motion for default should not be denied and the action dismissed for insufficient service of process. (ECF No. 11 ("OTSC")).

In response to the Court's Order, Plaintiff identified the Maspeth Address as Manetta's home address through a "Transunion People Search" (ECF No. 12 ("OTSC Resp.") ¶ 2; ECF No. 12-1 ("Ex. A")), and identified "Nina" as his mother-in-law, Antonina C. Cucchiara ("Cucchiara"), who lives at 6054 69th Place #1, Maspeth, NY 11378 (OTSC Resp. ¶¶ 3–4; ECF No. 12-2 ("Ex. B"); ECF No. 12-3 ("Ex. C")). Plaintiff argued that service by delivery to Cucchiara as a "co-occupant" of the Maspeth Address was proper as to Manetta under N.Y. C.P.L.R. § 308(2), and that service by delivery to Cucchiara was proper as to Triangle Eatery under N.Y. C.P.L.R. § 311-A, because Cucchiara "specifically stated she would and was authorized to accept service." (OTSC Resp. ¶¶ 4–7). Plaintiff also indicated that Defendants had actual notice of the lawsuit, as Plaintiff "discovered a previous lawsuit against the Defendants" in this District, *Joe Hand Promotions, Inc. v. Manetta*, No. 19-CV-4232 (NG) (SMG) (E.D.N.Y.), "contacted Defendants' counsel in the previous lawsuit . . . to inform counsel/Defendants of the claims and impending Default," and submitted evidence of those communications to the Court. (OTSC Resp. ¶ 8; ECF No. 12-4 ("Ex. D.")).

## **LEGAL STANDARDS**

### I.  Default Judgment

Rule 55 prescribes a two-step procedure that a plaintiff must conduct before obtaining a default judgment. *J & J Sports Prods., Inc. v. RK Soto Enters.*, No. 17-CV-2636 (WFK) (VMS), 2020 WL 7684894, at *5 (E.D.N.Y. Feb. 7, 2020) (citing *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015)), *adopted by* 2020 WL 7041089 (Dec. 1, 2020). First, when a defendant fails to plead or otherwise defend

against an action, "the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following entry of default, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). Upon application, the court is required to "accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

"In determining whether to enter a default judgment, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort." *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347 (E.D.N.Y. 2009). Accordingly, "before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[,]" *Sinoying Logistics PTE Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010), as "[a] judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected." *Sartor v. Toussaint*, 70 Fed. App'x 11, 13 (2d Cir. 2002). And "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also G&G Closed Cir. Events, LLC v. Narine*, No. 20-CV-4271 (MKB) (RML), 2021 WL 7906548, at *2 (E.D.N.Y. Dec. 13, 2021) (citations omitted) ("Before entering a default judgment, the court must consider the adequacy of the plaintiff's service of process on the defendant."), *adopted by* 2022 WL 950449 (Mar. 30, 2022).

"In addition to effecting proper service, a plaintiff seeking a default judgment must offer proof of proper service." *Narine*, 2021 WL 7906548, at *3 (citing Fed. R. Civ. P. 4(*l*)(1); N.Y. C.P.L.R. § 3215(f); 4B Wright & Miller, Fed. Prac & Proc. § 1130 (4th ed. 2021)); *see also Columbia Pictures Indus., Inc. v. Cap King*, No. 08-CV-4461 (NGG) (RML), 2010 WL 1221457, at *2 (E.D.N.Y. Mar. 29, 2010) (holding entry of default and default judgment were inappropriate where

proof of service was deficient). Indeed, "in the context of a motion for a default judgment, the Court's 'responsibility to ensure that a proper basis for relief exists . . . takes on added weight when analyzing service of process, which implicates due process considerations.'" *Romero v. Dazzling Events Inc*., No. 19-CV-5133 (AMD) (LB), 2020 WL 13577336, at \*8 (E.D.N.Y. Dec. 30, 2020) (quoting *Joe Hand Promotions, Inc. v. Dilone*, No. 19-CV-871 (NGG) (RML), 2020 WL 1242757, at \*2 (E.D.N.Y. Mar. 16, 2020)), *adopted by* 2021 WL 242188 (Jan. 25, 2021). Accordingly, "[i]neffective service-of-process is a ground to deny a motion for default judgment." *Happy Homes, LLC v. Jenerette-Snead*, No. 15-CV-1788 (MKB) (RML), 2016 WL 6599826, at \*3 n.10 (E.D.N.Y. Nov. 7, 2016); *see also Narine*, 2021 WL 7906548, at \*3 (recommending denial of motion for default judgment "because proof of service . . . is insufficient"); *Avanti Enterprises, Inc. v. A&T Produce, Inc.*, No. CV-09-1185 (NGG) (SMG), 2010 WL 3924771, at \*4 (E.D.N.Y. July 21, 2010) (same), *adopted by* 2010 WL 3909243 (Sept. 30, 2010).

II.    Service of Process

Under the Federal Rules, an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally" or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2). Service for a "corporation . . . partnership, or other unincorporated association that is subject to suit under a common name" can occur "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

The Federal Rules also permit plaintiffs to serve defendants according to the law of the state where the district court is located. Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A). As relevant here, New York law provides that individuals may be served by delivering the summons and complaint "to a person

of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to . . . his or her last known residence or . . . his or her actual place of business." N.Y. C.P.L.R. § 308(2). However, "[u]nder prevailing case law in New York . . . the alternative methods of personal service discussed within [N.Y. C.P.L.R. § 308(2)] are not available for effecting service on a limited liability company." *Mil-Spec Indus. Corp. v. Precision Ammunition, LLC*, No. 14-CV-7099 (JS) (SIL), 2016 WL 4179945, at *3 (E.D.N.Y. Aug. 5, 2016) (citing *Ciafone v. Queens Ctr. for Rehab. and Residential Healthcare*, 126 A.D.3d 662, 662 (N.Y. App. Div. 2015); *Stuyvesant Fuel Serv. Corp. v. 99-105 3rd Ave. Realty LLC*, 745 N.Y.S.2d 680, 681 (N.Y.C. Civ. Ct. 2002)). Rather, limited liability companies may be served by "delivering a copy personally to (i) any member of the limited liability company . . . if the management of the limited liability company is vested in its members, (ii) any manager . . . if the management of the [company] is vested in one or more managers, (iii) to any other agent authorized by appointment to receive process, or (iv) to any other person designated by the limited liability company to receive process, in the manner provided by law for service of a summons as if such person was a defendant." N.Y. C.P.L.R § 311-A(a); *see also* N.Y. Limit. Liab. Co. Law § 303 (permitting service of process by personal delivery to the secretary of state).

"Ordinarily, a plaintiff bears the burden of demonstrating that service of process was validly effected." *Westchase Residential Assets II, LLC v. Gupta*, No. 14-CV-1435 (ADS) (GRB), 2016 WL 3688437, at *4 (E.D.N.Y. July 7, 2016) (quoting *Khaldei v. Kaspiev*, No. 10 Civ. 8328 (JFK), 2014 WL 2575774, at *5 (S.D.N.Y. June 9, 2014)). "A process server's sworn statement of service creates a presumption that service has been effectuated." *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (citing *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)); *see also Bing Qing Zhou v. Slim Grass Beauty Corp.*, No. 18-CV-5761 (ILG)

7

(SJB), 2021 WL 54058, at *2 (E.D.N.Y. Jan. 6, 2021) (quoting *CSC Holdings, Inc. v. Fung*, 349 F. Supp. 2d 613, 616–17 (E.D.N.Y. 2004)) ("In the absence of facts to the contrary, there is a presumption that service was properly effected."). "However, the Court need not assume service was proper, even on a motion for default judgment, if the affidavits are inconsistent or unreliable." *Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043 (DLI) (SJB), 2019 WL 1450746, at *3 (E.D.N.Y. Jan. 28, 2019) (citing *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050 (FB) (CLP), 2015 WL 1469619, at *6 (E.D.N.Y. Mar. 30, 2015)); *see also McHale v. Chase Home Fin. LLC*, No. 17-CV-6089 (JMA) (AYS), 2020 WL 7711826, at *4 (E.D.N.Y. Dec. 29, 2020) ("While an affidavit of a process server ordinarily creates a presumption of proper service, the affidavit of service for [defendant] is simply too conclusory to create a presumption of proper service."). Further, "[t]o qualify as satisfactory proof of proper service, an affidavit should disclose certain essential facts," including "the location where the defendant was served, the documents that the defendant was served, and whether a person of suitable age and discretion was served." *Narine*, 2021 WL 7906548, at *3 (citations omitted); *see also United States v. John*, No. 18-CV-5045 (ENV) (VMS), 2020 WL 5536830, at *6 (E.D.N.Y. Mar. 2, 2020) (internal quotation marks and citations omitted) ("To prove proper service, the server should disclose enough facts to demonstrate the validity of service."), *adopted as modified by* 2020 WL 4915371 (Aug. 21, 2020).

## **DISCUSSION**

I.  Plaintiff Has Not Established that Either Defendant Was Properly Served

Although Plaintiff's response to this Court's Order to Show Cause provides additional facts to evaluate the sufficiency of service, Plaintiff has not satisfied its burden of demonstrating that either Defendant was properly served under New York law.

A.  <u>Service Was Not Proper as to Manetta</u>

As explained in the process server's affidavit, Plaintiff attempted to serve Manetta by delivering a copy of the Summons and Complaint to "Nina," a "co-occupant" of the Maspeth Address. (ECF No. 5). Plaintiff's submissions in response to the Court's Order to Show Cause confirm additional essential facts that the Maspeth Address is Manetta's home address, that "Nina" is his mother-in-law, and that his mother-in-law lives in Unit #1 of same building. (OTSC Resp. ¶¶ 2–4, Ex. A, Ex. B, Ex. C). Accordingly, Plaintiff argues that Manetta was properly served at his "dwelling place or usual place of abode" by delivery to his mother-in-law, a "co-occupant" of the Maspeth Address and a "person of suitable age and discretion." (OTSC Resp. ¶¶ 4–5 (citing N.Y. C.P.L.R § 308(2)).

"As a general rule, the 'actual dwelling place' or 'usual place of abode' of a tenant in a multiple dwelling has been held to be the apartment of the tenant." *Bruccoleri v. Gangemi*, No. 17-CV-7443 (ILG), 2019 WL 499769, at *4 (E.D.N.Y. Feb. 8, 2019). Accordingly, service upon delivery to a person of suitable age and discretion in a different unit of the same building does not constitute sufficient service of process. *See, e.g.*, *Thacker v. Malloy*, 49 N.Y.S.3d 165, 166–67 (N.Y. App. Div. 2017) ("Although the defendant resided in the same multiple-dwelling building as his mother, his apartment was on a higher floor, and it was separate and distinct from his mother's apartment. Hence, in serving the defendant's mother with the summons and complaint while she was inside her own apartment, service was not made at the defendant's actual dwelling place."); *Johnson v. Motyl*, 609 N.Y.S.2d 34, 35 (N.Y. App. Div. 1994) (finding service insufficient where a process server served defendant's downstairs neighbor a copy of the summons and complaint); *Biological Concepts, Inc. v. Rudel*, 558 N.Y.S.2d 312, 313 (N.Y. App. Div. 1990) (finding "personal service on defendant's mother-in-law at a different apartment" in the same building insufficient under

§ 308(2)); *Di Leo v. Shin Shu*, 30 F.R.D. 56, 58 (S.D.N.Y. 1961) (holding that service was not sufficient when serving defendant's daughter, who resided in a separate apartment in another part of the building); *see also* 4B Wright & Miller Fed. Prac. and Proc. § 1096 (4th ed. 2021) ("[S]ervice made at an apartment other than the defendant's apartment in a multiple-unit building has been held invalid on the theory that two different apartments in the same building are, in a sense, as separate and distinct as individual buildings under separate roofs.").

Despite Plaintiff's characterization of Cucchiara as a "co-occupant" of the premises, the submissions in response to the Court's Order to Show Cause instead establish that Manetta's mother-in-law lives in a separate apartment within the same building. (*See* OTSC Resp. ¶¶ 2–3; *see also* Ex. A ("Transunion People Search" indicating that the "[a]ddress contains: [two] apartments" and that Manetta lives in "APT 2"); Ex. B (indicating that the "[a]ddress contains: [two] apartments" and that Cucchiara lives in "APT 1"))). This additional evidence presents "contrary facts" that further muddy the waters and cause the Court to doubt whether the process server properly delivered the papers. *See Old Republic*, 301 F.3d at 57 ("In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, *in the absence of contrary facts*, we presume that [the defendant] was properly served with the complaint.") (emphasis added). As explained above, delivery to a defendant's mother-in-law, who lives in a separate apartment within the same building, is not sufficient to effectuate service. *See Rudel*, 558 N.Y.S.2d at 313. Without a supplemental affidavit from the process server attesting to delivery at the correct unit, this Court remains unconvinced by Plaintiff's unsworn response to the Order to Show Cause that the Summons and Complaint were properly delivered to a person of suitable age and discretion at Manetta's actual dwelling pursuant to New York law. Accordingly, Plaintiff has not satisfied its burden to prove proper service as to Manetta.

B. <u>Service Was Not Proper as to Triangle Eatery</u>

As detailed in the process server's affidavit, Plaintiff simultaneously attempted to serve Triangle Eatery at the Maspeth Address by delivering a copy of the Summons and Complaint to "Nina" in her capacity as a "member" of the limited liability company who "specifically stated he/she was authorized to accept service on behalf of the Corporation/Government Agency/Entity." (ECF No. 6).

Plaintiff's failure to allege in the Complaint or otherwise provide facts in the record to establish "Nina" as a "member" of the limited liability company, or otherwise explain her relationship to the company, in part prompted this Court's Order to Show Cause. (*See* OTSC at 3); *see also Rosas v. Cuzco Cap. Inv. Mgmt., LLC*, No. 19-CV-6180 (KAM) (SJB), 2021 WL 878862, at *3 (E.D.N.Y. Mar. 9, 2021) (finding "process server's affidavit does not establish that" recipient of service "was authorized to receive service by [d]efendant [limited liability company]," and "the court need not accept a process server's conclusory assertion that service of process was properly made upon a defendant, without more specific information"); *McHale*, 2020 WL 7711826, at *3– 4 (noting that "[a]bsent additional evidence showing that [recipient] is one of the permissible recipients for service," such service "did not comport with § 311-a" and that an "affidavit of service—which asserts that [the recipient of service] is a 'Managing Agent' for [d]efendant [limited liability company] but does not state the grounds for such belief—is . . . deficient and, therefore, is not entitled to the presumption of proper service."); *J & J Sports Prods., Inc. v. Dowling*, No. 18-CV-5086 (MKB) (RML), 2019 WL 6388803, at *3, *3n.7 (E.D.N.Y. Aug. 8, 2019) (citations omitted) (finding service deficient where plaintiff failed to independently prove essential facts of service and where affidavit "does not indicate whether the process server had personal knowledge of" those facts), *adopted in part, rejected in part*, 2019 WL 4727448

11

(E.D.N.Y. Sept. 27, 2019); *Augustin v. Apex Fin. Mgmt.*, No. 14-CV-182 (CBA) (VMS), 2015 WL 5657368, at *3 (E.D.N.Y. July 27, 2015) ("The Court has some concerns about the validity of service of process in this case. . . . Mr. Valentine's affidavit does not describe the basis of his knowledge that Ms. Velasco was 'designated by law to accept service of process on behalf of' Apex."), *adopted by* 2015 WL 7430008 (Nov. 23, 2015). Indeed, service upon "Nina" based on her status as a "member" would only be proper if Triangle Eatery is a member-managed LLC, which likewise was not alleged in the Complaint. *See* N.Y. C.P.L.R. § 311-A(a)(i).

The Court was also prompted in part to issue the Order to Show Cause because the Maspeth Address was not included in Plaintiff's Complaint as Triangle Eatery's place of business, was not defined as a place of business in either affidavit of service, and was not listed as the company's service address on the New York State Department of State website.[1] *See John*, 2020 WL 5536830, at *8 (internal quotation marks and citations omitted) ("The affidavit of service . . . states that [the recipient] indicated that they were authorized to accept service on behalf of the Corporation/Entity. This statement is confusing, as the [service address] is not the address listed for [defendant] with the New York State Department of State. . . . Based on this conflicting information, the Court expressed its concerns about validity of service . . . and gave [plaintiff] the opportunity to submit supplemental information showing why [service was proper].").

In response to the Court's Order to Show Cause, Plaintiff provided no supplemental testimony or additional evidence regarding the basis for the process server's personal knowledge of Cucchiara as a "member," did not establish whether Triangle Eatery is a member-managed LLC,

---

[1] The address listed for Triangle Eatery is the Astoria Address of M.I.A. Made in Astoria: 27-35 21st Street, Astoria, NY 11102. *See* Dep't of State, Div. of Corps., State Records & UCC, Corp. & Bus. Entity Database Searches, https://apps.dos.ny.gov/publicInquiry/; *J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171 (AMD) (SJB), 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 9, 2018) (citation omitted) ("The Court can and does take judicial notice of information from the New York Secretary of State's website.").

and did not establish any relationship between Cucchiara and Triangle Eatery beyond her role as its principal's mother-in-law. (*See* OTSC Resp.). Rather than address these deficiencies, Plaintiff argues that service was properly effectuated by delivery to "any other person designated by the limited liability company to receive process, in a manner provided by law for service of a summons as if such person was a defendant[,]" since Cucchiara was "asked . . . whether she would accept service on behalf of Triangle Eatery" and "specifically stated she would and was authorized to accept service." (*See* OTSC Resp. ¶¶ 6–7 (quoting N.Y. C.P.L.R. § 311-A; citing ECF No. 6)).

"Plaintiff bears the burden to show a 'basis for inferring that the defendant has authorized a particular person to accept service of process on his behalf.'" *Wilson v. WalMart Store, Inc.*, No. 15-CV-4283 (JS) (GRB), 2016 WL 11481723, at *3 (E.D.N.Y. Aug. 22, 2016) (quoting *DeMott v. Bacilious*, No. 11 Civ. 6966 (PAE), 2012 WL 601074, at *7 (S.D.N.Y. Feb. 24, 2012), *adopted by* 2016 WL 5338543 (Sept. 23, 2016). "In tendering service, [a] process server may rely upon the corporation's employees to identify the individuals authorized to accept service." *Old Republic*, 301 F.3d at 57 (citing *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272–73 (1980)). This logic extends to limited liability companies. *See NextEra Energy Mktg., LLC v. E. Coast Power & Gas, LLC*, No. 20 Civ. 7075 (JPO), 2021 WL 3173173, at *3 n.2 (S.D.N.Y. July 26, 2021). To satisfy New York's service requirements, "[t]he process server's reliance on corporate personnel must simply be 'reasonable.'" *Augustin*, 2015 WL 5657368, at *3 (quoting *Old Republic*, 301 F.3d at 57); *see also Fashion Page*, 50 N.Y.2d at 272 ("[I]f service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained."); *John*, 2020 WL 5536830, at *11 (finding service on a corporate defendant effective where "[t]he affidavit of service . . . states that [the recipient] indicated they were authorized to accept service," where "[t]here are not facial infirmities on the affidavit of service which call into

question [the process server's] reliance upon the representation," and where process was served at the address listed on the New York State Department of State website); *cf. Avanti Enterprises*, 2010 WL 3924771, at *3 (finding service deficient where "there is no indication that the process server attempted to ascertain the title or corporate position of . . . the individual who accepted service on behalf of the corporation," where plaintiff did not identify the individual "as an official or agent authorized to accept service" in response to a court order, where the individual was "also not named as a defendant in plaintiff's complaint, and the complaint [did] not contain any allegations concerning his role" and where "plaintiff [did] not even attempt to argue that it would have been objectively reasonable for the process server to think that [the individual] w[as] authorized to accept service given that the summons was not served at [corporate defendant's] place of business").

Importantly, service on the family members of corporate personnel is insufficient, even if the Summons and Complaint are subsequently redelivered to an appropriate corporate employee. *See Skelly v. Margus Co.*, 203 A.D.2d 276, 276 (N.Y. App. Div. 1994) (finding service improper where "process was served upon the wife of one of the officers of the corporate defendant, who allegedly claimed to be a managing agent of the corporation"); *Schuck v. 7309 Corp.*, 90 A.D.2d 828, 828 (N.Y. App. Div. 1982) (finding service deficient where papers were "left with the mother of an officer of defendant [corporation], [and] were not delivered to a person authorized to receive service for the corporation" even though the corporation "received notice of the action several days later when the papers were redelivered by the mother to her daughter, an officer who was a proper person to receive service").

Plaintiff points to no precedent in support of its proposition that an individual's statement that they are authorized to accept service is alone sufficient to constitute reasonable reliance, presents

no argument or evidence suggesting that Cucchiara was, in fact, authorized by Triangle Eatery to accept service, and presents no argument or evidence suggesting that the process server's reliance on Cucchiara's statement was objectively reasonable under the circumstances. Indeed, as in *Avanti*, Plaintiff has not established the process server's personal knowledge of Cucchiara's status as a member of the LLC, has not identified Cucchiara in the Complaint, and has not attempted to argue that it would have been objectively reasonable for the process server to believe that Cucchiara was authorized to accept service, given her acceptance of service at a residential address and her lack of any other connection to the company. *See Avanti*, 2010 WL 3924771, at *2–3. Further, even if Cucchiara had redelivered the papers to her son-in-law, which has not been established here, service would remain ineffective. *See Schuck*, 90 A.D.2d at 828. Accordingly, the Court finds that Plaintiff has not satisfied its burden of proving service on Triangle Eatery.

## II.   Plaintiff's Improper Service Warrants Denial of the Motion for Default Judgment and Dismissal of the Action Under Rule 4(m) Absent an Extension of Time to Serve

Since Plaintiff has not properly served either Defendant, and the deadline to serve under Rule 4(m) has passed, Plaintiff's Motion for Default Judgment should be denied and the action dismissed for insufficient service of process absent an extension of time to serve.

Where a defendant has not been properly served "within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "Plaintiffs bear the burden of showing that there was good cause in failing to timely serve a defendant." *Carroll v. Certified Moving & Storage, Co.*, No. 04-CV-4446 (ARR) (RLM), 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005).

"[A] district court may grant an extension in the absence of good cause, but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). In determining whether a discretionary extension is warranted, courts consider: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Ferreira v. Carranza*, No. 20-CV-2305 (PKC) (LB), 2022 WL 34610, at *2 (E.D.N.Y. Jan. 4, 2022) (quoting *E. Refractories Co., Inc. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999)); *see also Zapata*, 502 F.3d at 197 ("Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal with prejudice, we will not find an abuse of discretion in the procedure used by the district court, so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties.").

A.  <u>A Discretionary Extension Is Not Warranted</u>

In response to the Court's Order to Show Cause, Plaintiff maintains that service was properly effectuated on both Defendants, and therefore does not request an extension of time to serve or attempt to establish good cause for such an extension. However, Plaintiff's response that Defendants "have actual notice of this lawsuit and will suffer no prejudice" if the Court considers service properly effectuated, and that "denial and dismissal . . . would severely prejudice Plaintiff, result in irreparable harm, and justice to Plaintiff would be lost" (OTSC Resp. ¶ 10) may be read as an implicit request for a discretionary extension. Nevertheless, the Court finds that, on balance, the factors that courts consider in determining whether to grant such an extension weigh against Plaintiff in this case.

With respect to the first factor, the statute of limitations would bar Plaintiff's refiled action and failure to extend the time to serve Defendants would preclude relief for the alleged misconduct. (OTSC Resp. ¶ 10).[2] However, that factor is not dispositive. *See Ferreira*, 2022 WL 34610, at *3 (dismissing case under Rule 4(m) even though it would bar Plaintiff from bringing another suit); *Jones v. Westchester Cnty.*, No. 14 Civ. 9803 (KMK), 2018 WL 6726554, at *7 (S.D.N.Y. Dec. 21, 2018) ("[E]ven where the statute of limitations has run, 'courts have declined to extend the time to serve' where— as here—'a plaintiff has failed to demonstrate diligence, establish good cause, and/or provide any excuse.'"); *E. Refractories Co.*, 187 F.R.D. at 506 ("The fact that plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of plaintiff."). Plaintiff's failure to commence the action until the statutory expiration date also tempers the heavy weight that this factor ordinarily enjoys. *Yaxin Jing v. Angel Tips, Inc.*, No. 11-CV-05073 (RRM) (JMA), 2013 WL 950585, at *4 (E.D.N.Y. Mar. 11, 2013) ("Ordinarily, this [factor] weighs heavily in plaintiffs' favor. However here, this factor is tempered by the fact that plaintiffs filed this action after the statute of limitations had run on some if not all of plaintiffs' claims.").

With respect to the second factor, Plaintiff argues that Defendants have actual notice of the suit, as Plaintiff emailed Defendants' counsel from a previous lawsuit to inform them of the "impending default," and received a response that counsel would "contact Mr. Manetta and advise him of [the] email." (OTSC Resp. ¶¶ 8–10; Ex. D). Even accepting as true Plaintiff's assertion that

---

[2] "Courts in this circuit have adopted [a] three-year statute of limitations . . . for cases involving piracy of cable broadcasts." *J & J Sports Prods., Inc. v. Nest Rest. & Bar, Inc.*, No. 17-CV-04107 (NGG) (RER), 2018 WL 4658800, at *1 n.1 (E.D.N.Y. Aug. 7, 2018) (citing *Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co., L.P.*, 255 F. Supp. 2d 307, 314 (S.D.N.Y. 2003)), *adopted by* 2018 WL 4179452 (E.D.N.Y. Aug. 31, 2018); *see also J & J Sports Prods., Inc. v. Taqueria Juarez Rest., Inc.*, No. 17-CV-4158 (NG) (LB), 2018 WL 2056181, at *2 (E.D.N.Y. Mar. 16, 2018) (applying a three-year statute of limitations to plaintiff's § 605 claims), *adopted by* 2018 WL 2048370 (E.D.N.Y. May 2, 2018). Plaintiff filed this action on December 15, 2021, precisely three years after the claims accrued on the night of the boxing match on December 15, 2018. (*See* Compl.).

these attorneys previously represented Defendants,[3] an attorney's receipt of an email regarding a lawsuit does not establish her client's actual notice of that suit. Further, the earliest email to counsel was dated August 11, 2022, nearly six months after the original date of service, well after the deadline under Rule 4(m), and only when a default judgment motion was "impending," such that Defendants were not timely provided actual notice to defend against the claims. Beyond this communication, Plaintiff cites to no evidence to suggest that Defendants are aware of the action. *Cf. Kemp v. A & J Produce Corp.*, No. 00-CV-6050 (ERK) (CLP), 2005 WL 5421296, at *23 (E.D.N.Y. June 7, 2005) (finding service proper where, even though the summons may not have been served on an agent authorized to accept service on behalf of the corporation, defendant had actual notice of the lawsuit evidenced by its "extensive participation" in the litigation). Finally, even if Defendants received actual notice, "such notice would not 'cure [Plaintiff's] failure to comply with the statutory requirements for serving process[.]'" *Retrospective Goods, LLC v. T&M Invs. Int'l, LLC*, No. 20-CV-6201 (AMD) (RER), 2022 WL 2161935, at *5 (E.D.N.Y. May 20, 2022) (quoting *Sartor* 70 Fed. App'x at 13), *adopted by* 2022 WL 2161384 (June 15, 2022); *see also Krisilas v. Mount Sinai Hosp.*, 882 N.Y.S.2d 186, 188 (N.Y. App. Div. 2009) (quoting *Feinstein v. Bergner*, 422 N.Y.S.2d 356, 359–60 (N.Y. 1979)) ("[N]otice received by means other

---

[3] Other courts in this circuit have allowed "'backstop service' upon an attorney representing a defendant in another matter where 'the fact of that representation has been well-established.'" *Weingeist v. Tropix Media & Ent.*, 20 Civ. 275 (ER), 2022 WL 970589, at *9 (S.D.N.Y. Mar. 30, 2022) (quoting *Doe v. Hyassat*, 337 F.R.D. 12, 17 (S.D.N.Y. 2020)). Here, such alternative service was never requested, and the fact of representation is not "well-established." In *Joe Hand v. Manetta*, 19-V-4232 (NG) (SMG), Defendants' counsel never filed a notice of appearance before a notice of voluntary dismissal was filed. (*See* ECF No. 7, *Joe Hand Promos., Inc. v. Manetta et al.*, 19-CV-4232 (E.D.N.Y. Oct. 7, 2019)) Notably, the notice of voluntary dismissal was served on Mr. Manetta at a third location in Flushing, New York, and was served on Triangle Eatery at the Astoria Address. (*See id.*).

Plaintiff's attorney filed a suit against Mr. Manetta and Triangle Eatery earlier this year on behalf of Joe Hand Promotions, Inc. in a case that is currently pending before Your Honor. *See* Docket Sheet, *Joe Hand Promotions, Inc. v. Triangle Eatery et al.* 22-CV-1114 (AMD) (TAM) (E.D.N.Y.). In that case, the plaintiff similarly was found to have improperly served Triangle Eatery, which resulted in voluntary dismissal against the LLC, and similarly failed to comply with statutory requirements in connection with its motion for default judgment against Manetta. (*See id.*). Defendants' counsel has not filed a notice of appearance in that case, either.

than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court."). Accordingly, this factor weighs against granting a discretionary extension.

The third and fourth factors likewise weigh against granting an extension. With respect to the third factor, there is no evidence before the Court that Defendants have attempted to conceal the defects in service. *See, e.g.*, *Retrospective Goods,* 2022 WL 2161935, *5 ("[I]t is clear that Defendants did not attempt to conceal defects in service here, where they have not participated in the case or appeared before the Court."); *S. Bay Sailing Ctr., Inc.*, 2017 WL 913625, at *11 ("[T]here is no evidence that Defendant himself attempted to conceal a defect in service, and thus this factor disfavors South Bay"). With respect to the fourth factor, Defendants would be significantly prejudiced by an extension of time to serve, which would result in having to defend an otherwise time-barred action. *See Ferreira*, 2022 WL 34610, at *3 (quoting *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013)) ("With respect to prejudice, 'extending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on defendants.'").

Because Plaintiff has not demonstrated its burden of establishing proper service, and the circumstances do not warrant a discretionary extension of the time to serve, I respectfully recommend that Plaintiff's Motion for Default Judgment be denied, and that this action be dismissed for insufficient and untimely service of process. *See Happy Homes*, 2016 WL 6599826, at *3 n.10 ("Ineffective service-of-process is a ground to deny a motion for default judgment."); *see also Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021) (noting court had previously denied motion for default judgment without prejudice "because service of process was defective"); *Narine*, 2021 WL 7906548, at *3 (recommending plaintiff's motion for default judgment be denied without prejudice where proof of service is insufficient);

19

*Arnoldo Lopez Vasquez v. Lahori Kebab & Grill Corp.*, No. 18-CV-2117 (JS) (SIL), 2019 WL 4396724, at *3 (E.D.N.Y. Aug. 13, 2019) (recommending dismissal of claims against individual defendant for failure to effectuate service of process), *adopted by* 2019 WL 4620922 (E.D.N.Y. Sept. 5, 2019); *Mroszczak v. Tate & Kirlin Assocs., Inc.*, 397 F. Supp. 3d 296, 299 (W.D.N.Y. 2019) (denying motion for default judgment for untimely service of process and ordering plaintiff to show cause why the claims should not be dismissed for failure to comply with Rule 4(m)).

III.    Additional Grounds to Deny the Motion for Default Judgment

In addition to the service issues described above, Plaintiff's failure to comply with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931(b)(1), and with Local Rule 55.2(c) provide additional grounds to deny the Motion for Default Judgment.

A.    Failure to Comply with the Servicemembers Civil Relief Act

First, the Servicemembers Civil Relief Act "requires a plaintiff seeking default judgment to 'file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit.'" *J & J Sports Prods., Inc. v. Vergara*, No. 19-CV-2382 (FB) (VMS), 2020 WL 1034393, at *6 (E.D.N.Y. Feb. 6, 2020) (quoting 50 U.S.C. § 3931(b)(1)), *adopted by* 2020 WL 1031756 (Mar. 3, 2020); *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474 (ENV) (PK), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015); *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1–2 (E.D.N.Y. Sept. 26, 2018)). "The affidavit must provide the specific facts necessary to support the conclusion stated, and may not be based on conclusory statements or on 'information and belief.'" *Uribe*, 2018 WL 4861377, at *1 (quoting 50 U.S.C. § 3931(b)(1)). Further, "[t]he non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."

*Vergara*, 2020 WL 1034393, at *6 (quoting *Pruco Life Ins. Co. of N.J. v. Estate of Locker*, No. 12-CV-882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)).

Beyond the process server's affidavit of service of the Summons and Complaint indicating that he asked Cucchiara whether Manetta "was in active military service and received a negative reply" (ECF No. 5), Plaintiff's only reference to Manetta's military status can be found in the attorney affidavit submitted in support of the Motion, which indicates that "[t]o the undersigned's knowledge, Defendants are not infants, incompetent persons, or persons in military service or otherwise exempted from default judgment under the Service Members Civil Relief Act of 2003." (ECF No. 10-5 ("Jekielek Decl.") ¶ 9). This single reference is insufficient to comply with the Act, as counsel provides no indication for the basis of that knowledge, and fails to show that the requisite investigation into Manetta's military service was performed. Since "[t]he court lacks the power to excuse compliance with the statute," *Uribe*, 2018 WL 4861377, at *1, Plaintiff's non-compliance provides additional grounds to deny the instant Motion for Default Judgment as to Manetta.

### B.  Failure to Comply with Local Rules

"Where the movant is represented by counsel, as plaintiffs are here, a motion for default judgment will not be granted unless the party making that motion adheres to certain local and individual rules." *Bhagwat*, 2015 WL 13738456, at *1. In particular, Local Rule 55.2(c) requires that "all papers submitted to the Court" in connection with a motion for default judgment "shall simultaneously be mailed to the party against whom a default judgment is sought." Local Civ. R. 55.2(c). Copies of the documents must be sent to the defendant's last known address of residence, if an individual, and to the defendant's last known business address, if not an individual, and "[p]roof of such mailing [must] be filed with the Court." Local Civ. R. 55.2(c). Proper service of

the motion and the accompanying documents on non-appearing defendants is essential, because "mailing notice of such an application is conducive to both fairness and efficiency[.]" *RK Soto*, 2020 WL 7684894, at *8 (quoting Committee Note, Local Civ. R. 55.2). Accordingly, "[f]ailure to comply with Local Rule 55.2 warrants denial of the motion for default judgment." *Id.* (citing *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465 (AMD) (SJB), 2019 WL 1177854, at *3 (E.D.N.Y. Feb. 21, 2019), *adopted by* 2019 WL 1172381 (Mar. 13, 2019)).

Courts in this District interpret Local Rule 55.2(c) to "require proof of mailing by affidavit." *See Chocolatl v. Rendezvous Café, Inc*., No. 18-CV-3372 (CBA) (VMS), 2020 WL 3002362, at *3 (E.D.N.Y. Feb. 20, 2020) (quoting Local Civ. R. 55.2(c)), *adopted by* 2020 WL 1270891 (Mar. 17, 2020). In lieu of an affidavit, Local Rule 1.9 provides for three possible alternatives:

> In situations in which any Local Rule provides for an affidavit or a verified statement, the following are acceptable substitutes: (a) a statement subscribed under penalty of perjury as prescribed in 28 U.S.C. § 746; or (b) if accepted by the Court as a substitute for an affidavit or a verified statement, (1) a statement signed by an attorney or by a party not represented by an attorney pursuant to Federal Rule of Civil Procedure 11, or (2) an oral representation on the record in open court.

Local Civ. R. 1.9. If a party seeks to prove service without a sworn affidavit, including through an attorney's certificate of service, such proof should "set forth statements to which [a] Court can attribute evidentiary weight." *Chocolatl*, 2020 WL 3002362, at *3 ("Mr. Cooper states that he certifies papers 'were served upon the following parties by United States Mail.' Mr. Cooper does not state that he mailed the papers or set forth the basis of his knowledge that the papers were mailed."). An unsworn certificate that fails to accord with Local Rule 1.9 cannot be given such evidentiary weight, and is inadequate to demonstrate compliance with Local Rule 55.2(c). *Id.*; *see also John*, 2020 WL 5536830, at *14 (finding plaintiff "failed to submit an acceptable form of certificate of service for the papers submitted in support of the motion for default judgment" where

attorney's "certificate [wa]s unsworn and was not made in accordance with Local Rule 1.9, 28 U.S.C. § 1746 or Federal Rule of Civil Procedure 11.").

Here, Plaintiff has not provided an affidavit of service of all the papers submitted to the Court; rather, Plaintiff submits an unsworn certificate of service signed by Mr. Jekielek and appended to the Motion for Default Judgment. (Mot. for Default J. at 3 ("I certify that a copy of the foregoing Plaintiff's Motion for Default Judgment and accompanying documents was served on the 15th day of August, 2022, via First Class US MAIL, postage prepaid on the parties below: Pietro Manetta Triangle Eatery & Bar, LLC d/b/a M.I.A. Made in Astoria, 6054 69th Place #2, Maspeth, NY 11378,"). Mr. Jekielek's certificate of service is unsworn, was not certified under "penalty of perjury," and though signed by an attorney for Plaintiff and submitted pursuant to Rule 11, does not set out the basis for his knowledge that the papers were mailed and is therefore unacceptable. *See Chocolatl*, 2020 WL 3002362, at *4; *John*, 2020 WL 5536830, at *14. Accordingly, Mr. Jekielek's certificate of service is not sufficient to prove compliance with Local Rule 55.2(c).

Further, even if accepted by the Court, Mr. Jekielek's certification indicates only that the Motion was sent to the Maspeth Address, which Plaintiff has established as Manetta's last known residence, but has not established as Triangle Eatery's last business address. (*See* OTSC Resp. ¶ 2). Nothing on the record indicates that Triangle Eatery has done business at any address besides the Astoria Address. Accordingly, Plaintiff's failure to mail the documents to Triangle Eatery's last business address pursuant to Local Rule 55.2(c) provides additional grounds to deny the Motion for Default Judgment.

## <u>CONCLUSION</u>

For the reasons set forth above, I respectfully recommend that Plaintiff's Motion for Default Judgment be denied, and that this action be dismissed for failure to timely serve Defendants under Federal Rule of Civil Procedure 4(m).

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Ann M. Donnelly within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).


RESPECTFULLY RECOMMENDED.


/s/ Ramon E. Reyes, Jr.

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: December 14, 2022
Brooklyn, NY